EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

MARK A. INCIONG  CA BAR #163443
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: mark.inciong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00106 HG |
| | ) | |
| Plaintiff, | ) | UNITED STATES' MOTION |
| | ) | TO ADMIT 404(b) EVIDENCE; |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| HOLLY KOLIOPOULOS, (2) | ) | TRIAL: July 25, 2006 |
| | ) | TIME:  9:00 a.m. |
| Defendant. | ) | JUDGE: Hon. Helen Gillmor |
| | ) | |
| | ) | |

UNITED STATES' MOTION TO ADMIT 404(b) EVIDENCE

COMES NOW the United States of America, by and through

Edward H. Kubo, Jr., United  States Attorney, and Mark A.

Inciong, Assistant United States Attorney, and hereby files its

motion to admit Rule 404(b) evidence in its case in chief.  Said

motion is based upon the files and records of this case, together

with the attached statement of facts and memorandum of points and

authorities.  Additionally, the United States respectfully

requests leave of the Court to submit this motion one day past the June 28, 2006 deadline set on June 27, 2006 by the Hon. Barry M. Kurren as undersigned counsel was in trial in the matter of United States v. James Low, CR No. 06-0323 ACK from June 20, 2006 through June 28, 2006.

I

## STATEMENT OF THE CASE

On March 3, 2005, federal officers of the Hawaii field station of Customs and Border Protection (CBP) conducted an examination of one white square envelope with an address label that listed the sender as "Royal Mail Signed For, Great Britain, tracking number RI 5333 7631 4GB."  The label listed the recipient as "Stephen Echols, 45-943 Kam Hwy./Suite C-258, Hawaii 96744 USA."

The customs declaration on the outside of the subject parcel listed "iodine" as the description of the envelope's contents. CBP officers' suspicions were aroused regarding the package due to their knowledge that iodine is a "listed"[1] chemical and known precursor in the manufacture of methamphetamine.

In opening the package, agents discovered one bottle of iodine crystals.  The label on the front of the bottle stated the following:

> HYDER BUSINESS SERVICES LIMITED; IODINE CRYSTALS; 500g; EEC NO.231-442-4; MIN ASSAY 99.5%; PRODUCT CODE IC500P; REFER TO SPECIAL INSTRUCTIONS/SAFETY DATA SHEETS;HYDER BUSINESS SERVICES LIMITED, 145-157 ST JOHNS STREET, LONDON EC1V 4PY; TEL: 07946 289423.

FN 1 USSG Section 2D1.11 identifies iodine as a List II chemical.

A data sheet was also contained in the envelope that further described the iodine and its contents.  Additionally, CBP Officers discovered a second parcel addressed to Echols from the same sender that contained two (2) bottles of Ammonium Chloride. Ammonium Chloride is not a listed chemical.  However, it is also used in the manufacturing of methamphetamine. (See photos of the subject parcel and contents attached as Exhibit A.)

A check with the United States Postal Inspection Service (USPIS) revealed that Steven Echols filed a Postal Service Form 1583 listing mail box 258, 45-934 Kamehameha Highway, Suite C, Kaneohe, HI 96744 as his address to be used for mail delivery. The form was filed on November 20, 2002.  Echols listed Filter Service of Hawaii (FSH) as the name of his company also receiving mail at the 45-934 Kamehameha Highway Suite C-258 address.

A check with the Hawaii Department of Motor Vehicles revealed that Steven Echols listed 45-934 Kamehameha Highway, #258, Kaneohe, HI as his mailing address.  That address belongs to a United Parcel Service Store and P.O. box. (The address on the subject parcel was transposed as 45-943).  Echols' Hawaii driver's license expired on July 15, 2003.

Records checks, however, showed a current address for Echols as 94-068 Puanane Loop, Mililani, HI.  Subsequent surveillance identified Echols present at that address over the course of two days along with a maroon 2001 Dodge truck registered in his name. Cellular and landline telephones subscribed to Echols also listed the Puanane Loop address as his residence.

A check of Drug Enforcement Administration (DEA) databases revealed that on January 10, 2005, the DEA's Honolulu Office received information of a seizure by police in Ottawa, Canada. A mail parcel was seized on that date after a liquid precursor of methamphetamine was found inside four bottles. The package was addressed to FHS Inc., 45-934 Kamehameha Highway, Suite C-258, Kaneohe, Hawaii. The "FSH" is transposed but has the same street address and suite number. This parcel was never delivered due to it's seizure by Canadian police.

Criminal history record checks for Steven Echols revealed a number of drug arrests in Texas and Hawaii including a Texas felony drug conviction from December 4, 1985 where the defendant was sentenced to 10 years probation.

A check with the State of Hawaii, Department of Commerce and Consumer Affairs revealed that Steven Echols is the registered owner of FSH Inc. and the listed address was 45-934 Kamehameha Highway, Suite C-258, Kaneohe HI. The stated business purpose of FSH is "air filter charge-out of service supply." However, the company's business license has not been valid since June, 2004.

On March 4, 2005, United States Magistrate Kevin S.C. Chang authorized a Warrant for Installation and Monitoring of a Beeper device into the subject parcel which was found to contain 500 grams of iodine crystals.

In conjunction with the issuance of the beeper warrant, Immigration and Customs Enforcement (ICE) agents coordinated a "controlled delivery" of the subject parcel to 45-934 Kamehameha

4

Highway, Suite C-258, Kaneohe, HI 96744.  ICE agents prepared the subject parcel for the anticipated controlled delivery by removing the iodine crystals and placing a pseudo-substance, in this case charcoal, inside of the subject parcel.  "Sirchie"[2] powder was then applied to the container of the pseudo-substance. A beeper device was then installed in the subject parcel which would indicate the general location of the subject parcel and when the subject parcel is opened.

On March 4, 2005, in anticipation of the controlled delivery, surveillance units were positioned in the area of 45-934 Kamehameha Highway, Kaneohe, HI 96744, in order to maintain constant surveillance of the UPS Store during the controlled delivery.   Additional surveillance units were also placed at ECHOLS' Mililani residence, located at 94-068 Puanane Loop, as well as at ECHOLS' former residence at 59-510 Alapio Road in Pupukea.

On March 4, 2005, at approximately 1:00 p.m., surveillance units posted at Echols' residence of 94-068 Puanane Loop, Mililani observed a local-looking female described as approximately 5'2" – 5'5", 130 pounds, and brown hair, enter a maroon DODGE truck bearing Hawaii license number JTJ915. According to the records of the Hawaii Department of Motor Vehicles, that truck was registered to Steven Echols.  The female

---

FN 2 "Sirchie" powder is a fluorescent powder which is visible under an ultraviolet(UV) light and used to indicate who handled the contents of the subject parcel in an attempt to identify the culprits involved.

driving the truck was later identified as Defendant Holly
Koliopoulos with a date of birth of ███████████████ and a
social security number of █████████. Criminal history checks
for Koliopoulos reported 8 prior arrests in the State of
California and 3 prior arrests in the State of Hawaii. Six of
the eleven total arrests were drug related.

Prior to the controlled delivery, on March 3, 2005, agents
conducted surveillance of 46-179 Kalali Place, Kaneohe, HI 96744,
which was reportedly the address of ECHOLS' company - Filter
Service of Hawaii. At that time, agents observed a 1991 TOYOTA
pickup truck, blue in color, registered to Holly C. Koliopoulos.
Checks were made with the Hawaii Driver License Bureau that
recorded an active Hawaii Driver's License for Koliopoulos with a
current mailing address of 94-068 Puanane Loop, Mililani, HI
96789.

Also, on March 4, 2005, at approximately 1:30 p.m., USPIS
inspectors delivered the subject parcel to the UPS store at 45-
934 Kamehameha Highway, Kaneohe, HI 96744. A notice was placed
in UPS Box 258 which said that Steven ECHOLS had a registered
parcel that was being held at the counter for pickup. A second
notice regarding an unrelated seizure of marijuana was also
inadvertently left in the post office box. The signals emitted
from the beeper indicated that the parcel was at the UPS store
and that it was not opened.

On March 4, 2005, at approximately 3:15 p.m., Koliopoulos
was observed driving the maroon DODGE truck into the UPS store

parking lot located at 45-934 Kamehameha Highway, Kaneohe,
Hawaii.  Upon reaching the UPS store, Koliopoulos went to UPS Box
258, opened the box with a key and retrieved the mail from the
box.  Koliopoulos placed the mail in the maroon DODGE truck then
went back into the UPS store to retrieve the subject parcel from
the store clerk.  Koliopoulos inquired as to the note and store
personnel advised they had no knowledge of the note and gave
Koliopoulos the subject parcel.  Koliopoulos, whom at least two
of the UPS store employees recognized, signed "S. Echols" and
departed from the UPS Store.

Surveillance units followed Koliopoulos from Kaneohe to the
area of the North Shore.  The signals emitted from the beeper
indicated that the parcel was inside of the maroon DODGE truck
and that it was not opened.  Law enforcement units maintained
surveillance of Koliopoulos who stopped for a short period of
time at a house at Kualoa, then proceeded to drive until she then
stopped for a short period of time at a convenience store near
Kahuku.  She then picked up an unknown Caucasian male described
as approximately 50 years old, 5'5, and 180 lbs, near Puuluana
Road.  Koliopoulos and the unknown Caucasian male stopped at the
Ace Hardware store in Laie where the male purchased rat poison
and defogger, then drove back to Puuluana Road where Koliopoulos
remained in the car for about an hour.  The signals emitted from
the beeper indicated that the parcel was inside of the maroon
DODGE truck and that it was not opened.

At approximately 7:35 p.m., Koliopoulos drove in the direction of Haleiwa town.  The signals emitted from the beeper indicated that the parcel was inside of the maroon DODGE truck and that it was not opened.  Shortly after that, the surveillance teams lost contact with Koliopoulos and the tone signal.  At approximately 8:35 p.m., surveillance units once again located Koliopoulos near Haleiwa Harbor.  The signals emitted from the beeper indicated that the parcel was inside of the maroon DODGE truck and that it was not opened.  Law enforcement units maintained surveillance of Koliopoulos until she parked at Haleiwa Beach Park and went down to the beach area where she remained for a period of time.  The signals emitted from the beeper indicated that the parcel was inside of the maroon DODGE truck and that it was not opened.

Throughout the surveillance of Koliopoulos, surveillance units reported that Koliopoulos appeared to be conducting counter-surveillance, at times retracing her path, and also stopping on the side of the roadway for long periods of time, without getting out of her car in order to detect if law enforcement was following her.  At one point, Koliopoulos stopped at Hauula Beach Park and changed her shirt while she was still within her vehicle.  She then continued driving north bound and she parked on a street located across from Kahuku High School whereupon she remained for over an hour.

Koliopoulos then continued to Haleiwa Boat Harbor.  There, she met with a group of people near the public restroom area.

8

She then left the boat harbor and stopped at a Chevron gas station where she stayed for approximately 30 minutes.   At approximately 10:00 p.m., she returned to a different area of Haleiwa boat harbor where she met with a second group of people.

At approximately 10:15 p.m., law enforcement agents decided to terminate the controlled delivery and to make contact with Koliopoulos.  Agents located and approached Echols' Dodge truck in the parking lot of the Haleiwa boat harbor, but were unable to find Koliopoulos.  After searching the area for approximately 30 minutes, agents received a tip from a civilian present at the harbor who indicated that there were people inside a decrepit boat under repair on stilts near the harbor.  Two agents reached the boat by climbing a scaffolding erected next to it.  The agents were in plain clothes wearing windbreaker jackets with "Police" written across the back and neither had their weapons displayed.  As they boarded the boat, Koliopoulos emerged from hiding inside the boat, and asked something to the effect of, "What's this about?"  The two agents identified themselves as federal agents and asked to speak with her in a calm and courteous manner.  Koliopoulos asked if the agents wanted to talk to her about the note left in Echols' post office box referencing marijuana.  Koliopoulos was told the agents were investigating the parcel she had picked up at the UPS store earlier that day and specifically advised Koliopoulos that she was not under arrest and was free to leave.  She then agreed to speak with the officers.

Koliopoulos provided identification to the agents and, at their request, accompanied them to the location where the truck was parked and advised that the package was in the Dodge truck. She said she had picked up the truck that morning from "town" but did not specify an exact location. She stated she was going to deliver the package to a location near Ward and Prospect streets sometime during the next week and said she believed Echols would be at that location. Koliopoulos said she was in Haleiwa to look for shells for her business. She said she was going home at approximately 11:00 p.m., but would not state where she lived. During this contact with officers, Koliopoulos appeared to be under the influence of a controlled substance and was evasive, bordering on belligerent, in answering questions. Additionally, she provided answers that conflicted at times with answers she had provided earlier. For example, she stated that she did not know where Steven Echols lived but advised that he had resided somewhere on Ward and Prospect Street. At other times, she advised the agents that Echols had lived with her at 94-068 Puanane Loop, Mililani, HI. It appeared to the interviewing agents that she was withholding information on Echols, particularly where he resided.

Koliopoulos was asked for consent to retrieve the parcel from truck to which she agreed. When agents asked if they could search the entire truck, Koliopoulos was reluctant stating that it was Echols' truck. Later, she did consent to a search of the truck. However, Koliopoulos did not have the keys for the truck

to open it.  She advised agents that the keys were on the boat where she had been hiding.   After approximately 20-30 minutes, agents located the keys on the boat and used them to open the truck.   There, agents the recovered the subject parcel containing the pseudo-iodine as well as 5 boxes of Actifed and 2 boxes of Allerfed and two cell phones.

During the entire contact with Koliopoulos, there were no uniformed officers present.  There was no physical touching of other contact with the Defendant.  No agents ever displayed their weapons to her and no more than three agents participated in the interview process.  While other agents were present on the scene, no more than five to eight agents were ever in the immediate vicinity of Koliopoulos.  At no time during her contact with law enforcement, did Koliopoulos request, or even indicate any desire, to leave the area.

At approximately 1:00 a.m., Koliopoulos was advised she was under arrest for obtaining a listed chemical (iodine) through fraudulent means, in violation of 21 USC 843.  She was then transported to the DEA Airport Task Force offices.   At approximately 3:00 a.m., Koliopoulos was advised of her <u>Miranda</u> rights by ICE Agents Feeley and Camacho using a pre-printed Miranda advisement form.  Koliopoulos acknowledged her rights and waived them in writing.  (See Government Exhibit B, attached.)

In her post-Miranda statement, Koliopoulos advised she moved to Hawaii in 1989 and has known Steven Echols for the last five years.  She stated she has been dating Echols on and off for the

last seven months and resides with Echols, along with her 8-year old daughter, Anna, at Echols' residence on Puanane Loop in Mililani.  She stated that Echols owns a business (Filter Service Hawaii) and has one employee.  She advised Echols received $1,000-$2,000 a week from a family trust fund and that Echols uses heroin and ice and is currently on methadone.

Koliopoulos explained that at approximately 11:00 a.m. on March 4, 2005, she picked up Echols and drove to the UPS store on Kamehameha Highway in Kaneohe to pick up Echols' mail at his request.  She stated she retrieved the mail in Echols' post office box and left the store.  In looking at the mail, she noticed a parcel pickup slip and a handwritten note referencing two kilos of marijuana.  Koliopoulos stated she was confused and went back into the store to pick up the parcel and inquire regarding the note.  She was given the parcel and left the store with it and the note after not getting any explanation as to the note.  She then called Echols and asked about the note, to which Echols advised it must have been a mistake.  She further told Echols he had received a parcel with the words "London" on it.  Koliopoulos said she didn't know the parcel contained iodine or any precursor chemicals.

Koliopoulos denied any knowledge of the seven boxes of cold medicine found in her vehicle, but did admit that she purchased two boxes of cold medicine a week before.  She advised she took Vicadine, Codeine and smoked "ice" earlier in the night.  She stated there was a strong chemical odor present at her house in

Mililani because Echols liked to build rockets and chemicals are used in the rocket launching process.

Throughout the interview, Koliopoulos was not only evasive in her answers about her whereabouts prior to her arrest, but would periodically change her story. During a searched of her person at the cellblock, an ice pipe was seized from the bra area of her body. Koliopoulos admitted that she used crystal methamphetamine/ice and smoked the drug one to two times a week.

On March 5, 2005, agents applied for, and obtained, a federal search warrant for Echols' residence at 94-068 Puanane Loop, Mililani, Hawaii, authorized by the Hon. Kevin S.C. Chang. That same day, agents executed the warrant and encountered the Defendant, Steven Echols, Arthur Hidano and Koliopoulos' eight-year old daughter, Anna, present at the home.

As agents initiated their search of the lower level of the home they were overcome by fumes and were forced to withdraw from the home. Agents present from the Hawaii Narcotic Enforcement Division (NED) described the fumes as similar to those emitted from other locations they had processed where methamphetamine was being manufactured. A hazardous materials (haz-mat) team was called into the home and spent several hours clearing and processing the home before agents were allowed to re-enter.

In executing the warrant, agents found iodine, hydrochloric acid, white "Coleman" fuel along with other known ingredients used in the manufacture of methamphetamine. Also found was glassware, tubing and coffee filters typical of meth production.

Chemical splatter and multi-colored stains and burn marks indicative of meth manufacture were also observed.  Small amounts of actual methamphetamine were also found throughout the home as well as several books and guides on "how to" make methamphetamine along with pages of handwritten notes regarding the meth cooking process and lists of required ingredients. Steven Echols was then placed under arrest and taken into custody.

On March 17, 2005, Echols and Koliopoulos were indicted by a federal grand jury for Conspiracy to Possess Iodine with the Intent to Manufacture a Controlled Substance, in violation of Title 21, United States Code, Sections 846, 841(c)(1) and 841(c)(2).

On April 26, 2005, a motion hearing was conducted regarding Defendant Koliopoulos' motion to suppress statement and evidence. Defendant's motion was granted in regard to statements she made to agents at the Haleiwa Boat Harbor prior to her waiver of <u>Miranda</u> rights.  The remainder of Defendant's was denied after this Court ruled agents had probable cause to arrest Koliopoulos to search the truck she was driving.  This Court further found that Defendant later knowingly and voluntarily waived her <u>Miranda</u> rights and, thus, those post-<u>Miranda</u> statements are admissible.

On December 15, 2005, a First Superseding Indictment was returned charging Echols, Koliopoulos and Arthur Hidano with Conspiracy to Manufacture Methamphetamine in addition to the original charges in the March 17, 2005 indictment.

On January 12, 2006, Echols entered a plea of guilty to an Information in CR No. 06-00003 HG charging him with conspiracy to manufacture 50 grams or more of methamphetamine.  He was sentenced on May 11, 2006 to 120 months imprisonment, five years probation and a $100 special assessment.

### III

### POINTS AND AUTHORITIES

**B.    Defendant's Prior Methamphetamine Use and Possession of a Methamphetamine Pipe is Admissible Under Fed. R. Evid. 404(b).**

The United States hereby notifies Defendant of its intention to offer evidence of Defendant's prior methamphetamine use and possession of a methamphetamine pipe on the day of her arrest.  This evidence will be offered to prove Defendant's knowledge that methamphetamine was planned to be manufactured, was being manufactured and was present at her residence of 94-068 Puanane Loop, Mililani, Hawaii as well as evidence of intent, motive, opportunity, absence of mistake and plan.

The United States can prove these facts by the Defendant's own post-<u>Miranda</u> statements to agents and the admission of the ice pipe seized from Defendant's person in a search conducted incident to her arrest.

> Federal Rule of Evidence 404(b) provides that Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Ninth Circuit has "uniformly recognized that the rule is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982).  Prior bad acts evidence is thus admissible "except where it tends to prove only criminal disposition." United States v. Rocha, 553 F.2d 615, 616 (9th Cir. 1977).  Accord: United States v. Ayers, 924 F.2d 1468, 1472 (9th Cir. 1991); Heath v. Cast, 813 F.2d 254, 259 (9th Cir.), cert. denied, 484 U.S. 849 (1987); United States v. Herrell, 588 F.2d 711, 714 (9th Cir. 1978), cert. denied, 440 U.S. 964 (1979); United States v. Sangrey, 586 F.2d 1312, 1314 (9th Cir. 1978); United States v. Riggins, 539 F.2d 682, 683 (9th Cir. 1976), cert. denied, 429 U.S. 1045 (1977).  Rule 404(b) thus bars the introduction of evidence concerning prior criminal conduct or other bad acts by the defendant only if offered for the purpose of proving the defendant's bad character and implying that he acted in accordance with that bad character in the instant case.

In this case, the United States will offer facts which show the Defendant's prior involvement with methamphetamine to demonstrate that she that knew that methamphetamine was planned to be manufactured, was being manufactured and was present at her residence of 94-068 Puanane Loop, Mililani, Hawaii. Specifically, the United States will seek to introduce the Defendant's statement that she smoked "ice" earlier on the day of her arrest.  An ice pipe will also be admitted into evidence

which was discovered in the Defendant's bra during a search of
her person at the jail cellblock.  Additional statements by the
Defendant in which she admitted that she used crystal
methamphetamine/ice and smoked the drug one to two times a week
would also be introduced.  These facts will also be offered to
rebut any possible defense argument that Defendant was innocently
present in the residence while the methamphetamine was being made
there or possessed there by another individual.

        The admissibility of evidence under Rule 404(b) is
evaluated using a four-part test.  First, the evidence must tend
to prove a material point at issue.  Second, it must not be too
remote in time.  Third, the proof must be sufficient to support a
finding that the defendant committed the other act.  Fourth, in
some cases, the prior act must be similar to the offense charged.
If these four tests are satisfied, the court must then balance
the probative value of the evidence against any prejudicial
effect.  United States v. Rude, 88 F.3d 1538, (9th Cir. 1996);
United States v. Corona, 34 F.3d 876, 881 (9th Cir. 1994), cert.
denied, 115 S.Ct. 773 (1995); United States v. Spillone, 879 F.2d
514, 518-520 (9th Cir. 1989), cert. denied, 498 U.S. 864 & 878
(1990).  Here the United States' evidence passes all four parts
of the test, and the prejudicial effect of the evidence does not
substantially outweigh its probative value.

    The United States' evidence in this case (defendant's
involvement in the possession and use of methamphetamine and ice
paraphernalia) is material to the issues of knowledge and intent,

both of which are elements of the crimes charged, as well as opportunity, plan, absence of mistake and motive.

The Ninth Circuit has "consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics." United States v. Mehrmanesh, 689 F.2d 822, 832 (9th Cir. 1982).

> A defendant's prior conviction for possession of heroin with intent to distribute is relevant to a material element of the charged offense because it tends to show knowledge.
>
> The fact that [defendant] had been convicted of possessing heroin with the intent to distribute certainly makes the existence of his knowledge regarding the current heroin sale more probable than not. It helped disprove [defendant's] contention that he was merely an innocent bystander, and tended to show that he was aware of the heroin transaction.

United States v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir. 1993).

"Appellant's possession of marijuana in the prior case clearly tended to show that he knew about the marijuana in the present case and had an illegal intent." United States v. Rocha, 553 F.2d 615, 616 (9th Cir. 1977). Such a prior conviction is "highly probative as to knowledge and intent." United States v. Sigal, 572 F.2d 1320, 1323 (9th Cir. 1978). Similarly, evidence of a defendant's prior drug possession is "relevant and admissible to establish his intent to distribute." United States

v. Robertson, 15 F.3d 862, 871 (9th Cir.), cert. denied, 115
S.Ct. 362 (1994).

For these reasons, the Ninth Circuit has repeatedly held
that evidence of prior drug trafficking activity is admissible
under Rule 404(b) as probative of the defendant's knowledge and
intent to distribute drugs. See United States v. Robertson,
supra, 15 F.3d at 871; United States v. Soyland, 3 F.3d 1312,
1315 (9th Cir. 1993), cert. denied, 115 S.Ct. 32 (1994); United
States v. Arambula-Ruiz, supra, 987 F.2d at 603; United States v.
Jones, 982 F.2d 380, 382-383 (9th Cir. 1992); United States v.
Houser, 929 F.2d 1369, 1373 (9th Cir. 1990); United States v.
Rubio-Villareal, supra, 927 F.2d at 1503; United States v. Sinn,
622 F.2d 415, 416 (9th Cir.), cert. denied, 449 U.S. 843 (1980);
United States v. Sigal, supra, 572 F.2d at 1323.  Admission of
such evidence is particularly appropriate where the defendant
raises a defense of mere presence.  United States v. Arambula-
Ruiz, supra, 987 F.2d at 603; United States v. Carpenter, 933
F.2d 748, 751 (9th Cir. 1991); United States v. Houser, supra,
929 F.2d at 1373; United States v. Sigal, supra, 572 F.2d at
1323.

The second requirement, that the previous conduct not be
too remote in time, is also met here.  The most recent incident
of methamphetamine use and possession of methamphetamine
paraphernalia occurred the same day as Defendant's arrest.  Her
drug use prior to that was also very recent and nearly
contemporaneous with the offense date.  See United States v.

Ross, 886 F.2d 264, 267 (9th Cir. 1989), cert. denied, 494 U.S. 1083 (1990) (thirteen-year-old conviction admissible); United States v. Spillone, supra, 879 F.2d at 518 (seventeen years not too remote); United States v. Rude, supra, 88 F.3d 1538 (eight years not too remote); United States v. Houser, supra, 929 F.2d at 1373 (9th Cir. 1991) (four years not too remote); United States v. Ono, 918 F.2d 1462, 1465 n. (9th Cir. 1990), cert. denied, 510 U.S. 1063 (1994) (seven-year-old conviction admissible).

The evidence also satisfies the third requirement, that it be sufficient to support a finding that the Defendant committed the prior act. The United States will present testimony from the arresting and interviewing agents to establish the Defendant's own statements and conduct (and thus the similarity of that conduct to the charged conduct in this case).

The final element of the four-part test, the similarity between the previous act and the charged conduct, is also satisfied.[3/] At first glance, they may not appear to be analogous. However, closer examination reveals many similarities. For instance, both the charged offenses and the

---

FN 3  The Ninth Circuit has generally ruled that similarity is not required if knowledge is the issue. United States v. Santa-Cruz, 48 F.3d 1118, 1119 (9th Cir. 1995); United States v. Corona, 34 F.3d 876, 881 (9th Cir. 1994); United States v. Arambula-Ruiz, supra, 987 F.2d at 603. Similarity, is, however, required when the prior conduct is offered to prove intent. Id. See also United States v. Mayans, 17 F.3d 1174, 1181 (9th Cir. 1994) (similarity required where knowledge and intent are at issue). Because the United States will offer the defendant's prior act to establish both knowledge and intent, a showing of similarity is required.

Defendant's admitted conduct are examples of the distribution of illegal drugs albeit at opposite ends of the distribution process.  Both involved the procurement of methamphetamine and/or ingredients needed to make methamphetamine, the negotiation for the price of the drugs and the involvement of a number of other individuals.  As such, the similarity requirement is met.

The United States would also note that where, as here, the United States seeks to introduce prior bad acts for the purpose of proving knowledge, admissibility requires "a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." United States v. Martinez, 182 F.3d 1107, 1111 (9th Cir. 1999).  There can be no doubt that such a "logical connection" is present here.  As detailed above, Defendant's active involvement in the drug culture -at both ends of the drug trafficking world -  would have taught her that many indicia of drug trafficking and manufacturing were present in the instant case.  Defendant's knowledge of these facts is probative of her knowledge of the methamphetamine being manufactured and stored in her residence.

In short, such evidence of her prior conduct clearly bears on the extent of guilty knowledge that Defendant had in this case.  As the Ninth Circuit has held in similar circumstances, the prior acts of drug trafficking easily meet the criteria of Fed. R. Evid. 401, in that they undisputably make "the existence of [Defendant's] knowledge [in the instant case] more probable

than it would be without the evidence." Arambula-Ruiz, 987 F.2d at 603.

Finally, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Unfair prejudice means that the evidence "provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982). Evidence is not unfairly prejudicial simply because it tends to convince the jury of the defendant's guilt; it is only when the evidence moves the jury on a basis unrelated to the merits of the case that it is prejudicial. In determining the probative value of the evidence, the court must consider not only the logical inferences that the evidence will support, but also the actual "need for evidence of prior criminal conduct to prove a particular point." United States v. Bailleaux, supra, 685 F.2d at 1112. The court must then balance the probative value against the danger of unfair prejudice, but can exclude the evidence only when the latter substantially outweighs the former. United States v. Yazzie, 59 F.3d 807, 810 (9th Cir. 1995); United States v. Bailleaux, supra, 685 F.2d at 1111-1112.

For the reasons previously stated, evidence of Defendant's past drug activity is highly probative to show not only her knowledge of the methamphetamine and methamphetamine manufacturing occurring in this case, but also proof of intent,

motive, opportunity, preparation, plan, identity and absence of mistake or accident.  As in most drug cases, knowledge and intent will be the key issues.  Although there may be the possibility of some slight danger of unfair prejudice from the introduction of Defendant's prior criminal activity, any improper prejudicial impact can be cured by a limiting instruction to the jury. Where, as here, there is a high need for the prior act evidence, and its probative value outweighs any prejudicial impact, it should be admitted with a limiting instruction.  <u>United States v. Arambula-Ruiz</u>, <u>supra</u>, 987 F.2d at 604; <u>United States v. Houser</u>, <u>supra</u>, 929 F.2d at 1373.

**III**

**<u>CONCLUSION</u>**

Based on all of the above, the United States' motion to admit Defendant's prior methamphetamine use and possession of a methamphetamine pipe, pursuant to Federal Rule of Evidence 404(b), should be granted.

DATED: June 29, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney


By <u>/s/ Mark A. Inciong</u>
MARK A. INCIONG
Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:


Served Electronically by CM/ECF:

HARLAN KIMURA, ESQ.                          June 29, 2006
hyk@aloha.net

Counsel for HOLLY KOLIOPOULOS


DATED:  Honolulu, Hawaii, June 29, 2006.


<u>/s/ M. Derby-Taufa'asau</u>